IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LARNELL E. HENDRICK,

    Plaintiff,

v.

WARDEN ROBERTS DEAN, JR., et al.,

    Defendants.

Civil Action No.: BAH-24-1214

## MEMORANDUM OPINION

Self-represented Plaintiff Larnell E. Hendrick, an inmate at Jessup Correctional Institution ("JCI"), filed this civil rights complaint pursuant to 42 U.S.C. § 1983, alleging Defendants have retaliated against him for filing grievances against them. ECF 1 (complaint); ECF 8 (supplement). Defendants Warden Robert Dean, Jr., Lieutenant Bilal Ahmed, Dr. Jacqueline Moore, Captain Oluwole Olowe, Officer Ogunduyile, Officer Ngome, Ayo Ogunmolasuyi, Candace Welds, Captain Olanrewaju Owolabi, Officer Olusegun Akinwekomi, and the Department of Public Safety and Correctional Services ("DPSCS") (collectively "Defendants") filed a Motion to Dismiss (the "Motion").[1] ECF 38. Hendrick responded (ECF 41) and Defendants replied (ECF 57). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, Defendants' Motion is **GRANTED** in part and **DENIED** in part.

### I. COMPLAINT ALLEGATIONS

In his verified Complaint, Hendrick claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendment of the United States Constitution. ECF 1, at 3. He also alleges the tort of intentional infliction of emotional distress and violation of the Maryland

---

[1] The Clerk will be directed to amend the docket to reflect Defendants' full and correct names.

Declaration of Rights. *Id.* Hendrick states that he was transferred from North Branch Correctional Institution to JCI in 2017 pursuant to a settlement agreement in a prior action he brought in this Court, *see* Civ. No. DKC-14-2398. ECF 1, at 4. DPSCS agreed Hendrick would be seen by medical staff within 30 days of arrival to evaluate his condition and need for a single cell. *Id.* Hendrick says that no "patient care conference" occurred but claims he was assigned to a "medical single cell." *Id.* at 4–5. Hendrick continued to be in a single cell for the next seven years. *Id.*

On September 17, 2023, Hendrick submitted a grievance to Captain Olowe requesting that his cell door be deadlocked when he exited. ECF 1, at 5. A week later, Olowe told Hendrick "to stop filing grievances before [he] get [sic] his self in trouble." *Id.* Shortly thereafter, Hendrick filed a grievance related to attendance rules for a family day event. *Id.* at 5–6. Days before the event, Hendrick was moved to administrative segregation without being given a reason. *Id.* at 6. During a video hearing with the Administrative Segregation Review Board (consisting of Ahmed, Owolabi, Welds, Ogunmolasuyi, and Dr. Moore), Lt. Ahmed allegedly told Hendrick the move was "because of an investigation," but gave him no further information. *Id.* at 6–7.

Hendrick alleges several instances of mistreatment. He claims that Ogee and seven other officers shook down his cell and that Ogee threatened to remove his name from an unidentified grievance or he would have other inmates "deal with you." ECF 1, at 7. While in administrative segregation, Hendrick was housed with another inmate for three weeks. *Id.*; ECF 8, at 12–13. Ogunmolasuyi visited Hendrick and asked if he was ready to "sign off" on his grievances, stating that his filings were the reason for his segregation. ECF 1, at 8. Dr. Moore also visited Hendrick in segregation and urged him to sign off on the grievances asking, " . . . do you want a quality of life? If not, I'm not going to do nothing for you." *Id.* at 14. When Hendrick told Dr. Moore it was her job to help him with his anxiety, he says that Dr. Moore replied, "F--- you." *Id.* Hendrick also

recounts an instance in which Olowe told him that Ogee and Ngome were not going to "let up off of [Hendrick]" until he stopped filing grievances. *Id.* at 10.

On December 13, 2023, during another Review Board hearing, Welds and Ahmed told Hendrick to stop writing up the staff or there would be consequences. *Id.* Owolabi and Welds offered Hendrick a "body waiver" and told him he would be returned to a single cell in general population if he signed it. *Id.* at 11. Hendrick signed it, noting that it was pursuant to the promised transfer, which Hendrick says Owolabi, Welds, and Akinwekomi confirmed. *Id.* at 12. Hendrick explains he did so because he believed he would be safer in general population where there are more people. *Id.* at 16.

Hendrick wrote to Warden Dean on February 12, 2024, reasserting his request to have his cell door locked when he exited to avoid it being ransacked. ECF 1, at 9–10. When he encountered Dean weeks later, Dean's response was, "I received your letter, so what." *Id.* at 10. Hendrick's request was based on his own experience and reports from other inmates that Ngome and Ogee would enter his cell when he was downstairs. *Id.* at 10–11. When he confronted the officers, they responded, "whatever mail you get inmates will get, whatever pictures you get they'll get." *Id.* at 11. Hendrick confirms that he saw various pieces of his personal and legal mail going around JCI. *Id.* Ngome and Ogee told Hendrick they were directing inmates to threaten him because of the grievances and prior lawsuits he filed. ECF 8, at 7. On another occasion, Ogee threatened that such treatment would continue even if he was transferred to another facility. *Id.* at 7–8.

On February 13, 2024, the day after Hendrick wrote to Warden Dean, he was called down to the visiting room where Ogee told him he had been randomly selected for urinalysis. ECF 1, at 13. While Hendrick gave his urine sample, Ogee said, "we've alerted all shifts to you, we've

3

assigned inmates to deal with you, and your settlement agreement has brought you here for us to crush you." *Id.* at 14.

As a result of Defendants' alleged misconduct, Hendrick asserts that he has suffered emotional distress, fear, inability to sleep, fear of being around others, increased headaches, exacerbation of his idiopathic intracranial hypertension, anxiety, and depression. ECF 1, at 15. He seeks monetary damages as relief. *Id.* at 3, 17.

In a supplement to his complaint filed on July 3, 2024, Hendrick asserts that DPSCS violated his rights by failing to provide adequate space to store personal property. ECF 8, at 4. He states that there are no lockers that can be closed or locked. *Id.* Hendrick contends that DPSCS has violated numerous of its own policies and "arbitrarily entered into a settlement agreement that cause[d] substantial harm to [Hendrick]." *Id.* at 6. He further asserts that Dean, Olowe, Ahmed, Akinwekomi, and Owolabi are liable as supervisors because they are the supervisors of the segregation housing unit. *Id.* at 6–7. Hendrick further requests that he be transferred to Maryland Correctional Training Center or Western Correctional Institution for his safety. *Id.* at 15–16. Defendants move to dismiss all claims. *See* ECF 38.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss[2] for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief

---

[2] Though Defendants' note in their motion that they seek summary judgment "in the alternative," ECF 38, at 1, they offer no argument in support of summary judgment in their memorandum in support of the motion (or in their reply brief) and repeatedly assert only that the claims "should be dismissed," *id.* at 11, 13. Summary judgment is ordinarily inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Plus, Defendants provide no materials pertinent to the Rule 56 standard and thus appear to have abandoned any effort to seek that relief at this stage. As such, the Court will evaluate the motion as one seeking dismissal under Rule 12, not summary judgment under Rule 56.

above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).

In ruling on a Rule 12(b)(6) motion, a court's focus should be on the complaint. *Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). The Court may also consider documents attached to the motion if they are integral to the complaint and authentic. *Id.* Hendrick submits his own declaration with his response to Defendants' Motion. *See* ECF 41-1. His declaration is outside the pleadings, and the Court will not consider it.

The Court is mindful that Hendrick is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990).

### III. ANALYSIS

Defendants assert that Hendrick has failed to state any sufficient claims against Defendants and therefore the Complaint, as supplemented, must be dismissed. *See* ECF 38-1. They state that

even a liberal reading of the pleadings "fail[s] to yield anything beyond bald accusation[s] without Constitutional implications." *Id.* at 5.

### A. Eleventh Amendment Immunity

Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from citizen suits in federal court absent state consent or Congressional action. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-204(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. *See Chris X v. Yes Care Health*, Civ. No. BAH-23-2024, 2024 WL 3995166, at *6 (D. Md. Aug. 29, 2024). Accordingly, to the extent Hendrick sues Defendants in their official capacities, DPSCS and all individual Defendants in their official capacities are immune from suit and those claims must be dismissed. *See Clark v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009) (holding that "the Maryland Department of Public Safety and Correctional Services is undoubtedly an arm of the state for purposes of § 1983" and therefore immune from suit under § 1983).

### B. Retaliation

To state a claim of retaliation for exercising a First Amendment right, a plaintiff must allege that: (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the plaintiff's First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Shaw v. Foreman*, 59

F. 4th 121, 130 (4th Cir. 2023); *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017); *Constantine v Rectors & Visitors of George Mason Univ.*, 411 F.3d 479, 499 (4th Cir. 2005). In assessing a First Amendment claim of retaliation, the question, "from an objective standpoint," is "whether the challenged conduct would 'likely deter a person of ordinary firmness from the exercise of First Amendment rights.'" *Snoeyenbos v. Curtis*, 60 F.4th 723, 731 (4th Cir. 2023) (quoting *Constantine*, 411 F.3d at 500). Thus, "the challenged conduct" must "generate more than a de minimis inconvenience." *Id.* at 730. Moreover, the Fourth Circuit has stated: "An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." *Martin v. Duffy*, 977 F. 3d 294, 304 (4th Cir. 2020) (cleaned up) (citation omitted).

Defendants assert that Hendrick has failed to allege a viable retaliation claim because he does not assert that the alleged misconduct had any chilling effect on Hendrick or otherwise impaired his First Amendment rights. ECF 38-1, at 11. The Court disagrees. First, it is clear that "officials may not retaliate against inmates for filing grievances." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 544 (4th Cir. 2017); *Martin*, 858 F.3d at 249 ("[B]y alleging that he filed a grievance against a sergeant for battery, Martin has sufficiently pleaded that he engaged in protected conduct."). Moreover, Hendrick does not have to show that he was personally deterred from exercising his First Amendment rights in light of Defendants' actions, only that the conduct would have a chilling effect on "a person of ordinary firmness," *Constantine*, 411 F. 3d at 500, and the effect was "more than a *de minimis* inconvenience," *ACLU of Md., Inc. v. Wicomico Cnty., Md.*, 999 F.2d 780, 786 (4th Cir. 1993). Indeed, the Fourth Circuit has "never held that a plaintiff must prove that the allegedly retaliatory conduct caused her to cease First Amendment activity altogether." *Constantine*, 411 F. 3d at 500. Accepting the facts in the Complaint as true, as the

7

Court must at this early stage of the litigation, Hendrick alleges that in response to the grievances he filed, he was threatened, placed in administrative segregation without cause, lost visitation opportunities, was double celled despite his single cell order, had his mail distributed to other inmates at JCI, and was subjected to a drug test. These allegations cannot be described as *de minimus* injuries. Hendrick has plausibly alleges that a person of ordinary firmness would be fearful that continuing to file grievances would result in more adverse actions such as placement on administrative segregation. *See Martin*, 858 F.3d at 250 (holding that an inmate "sufficiently alleged [] adverse action against him by confining him in segregation" after the filing of grievances).

Defendants' argument that Hendrick's filing of "a multitude of separate documents in this case defies any allegation of a chilling effect," ECF 38-1, at 11, is unavailing. Putting aside that the filing of documents relates to *this* case and not the institutional grievances he alleges he was retaliated against for filing, Hendrick repeatedly asserts that he was fearful of Ahmed and thus excluded facts and documents from both his grievance *and* court filings because he feared for his life if Defendants knew he was pursuing complaints against them. *See* ECF 1, at 9; ECF 41, at 8. Defendants' Motion will be denied as to Hendrick's retaliation claim.

Defendants also argue that several instances of the alleged misconduct do not state constitutional claims separate from Hendrick's retaliation claim. *See* ECF 38-1, at 5–6, 8–9. It may be true that when considered individually, certain of these allegations may not be viable as they would, standing alone, constitute a mere "*de minimis* inconvenience." *ACLU of Md., Inc.*, 999 F.2d at 786. However, when considered as a course of conduct purportedly designed to quell access to remedies to which Hendrick is entitled, the Court agrees that Hendricks has properly alleged a First Amendment retaliation claim against all Defendants except DPSCS. Further,

Hendrick's claims for intentional infliction of emotion distress and alleged violations of the Maryland Declaration of Rights will also move forward as Defendants raise no more than conclusory arguments for their dismissal. *See* ECF 38-1, at 7.

Finally, Defendants argue that Hendrick's request for damages as relief is inappropriate because he has not sufficiently plead that he suffered a physical injury in addition to his emotional distress or how Defendants were the reasonable cause of that distress. ECF 38-1, at 11–12. While true that Hendricks lists emotional damages among his stated injuries, Defendants conveniently omit that Hendrick also claims that he suffered from increased headaches and exacerbation of his idiopathic intracranial hypertension in addition to anxiety and depression. ECF 1, at 15. Hendrick has thus plead sufficient injuries for his damages claim to survive a motion to dismiss.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion is granted in part and denied in part. Hendrick's claims against DPSCS and Defendants in their official capacities are dismissed. The remaining Defendants shall answer the Complaint within 30 days of the issuance of this memorandum opinion and the accompanying Order. Hendrick, who has previously requested the assistance of counsel, will be appointed counsel to represent him in this case moving forward.

A separate Order follows.

Dated: January 20, 2026

/s/
Brendan A. Hurson
United States District Judge